In re Evan M. SLAVITT, Respondent.

No. 10–BG–730.

District of Columbia Court of Appeals.

Filed Sept. 23, 2010.

Bar Registration No. 358861, BDN: 214–10.

Before FISHER and THOMPSON, Associate Judges; and NEWMAN, Senior Judge.

### ORDER

In re C.A.B. & H.N.B.;
L.M.F., Appellant.

No. 09–FS–858.

District of Columbia Court of Appeals.

Argued May 27, 2010.

Decided Sept. 23, 2010.

T. Michael Barry for appellant.

Jonathan M. Krell, with whom Christine M. Smith was on the brief as guardian ad litem, for appellee L.S.

George Tilton filed a statement in lieu of brief, for appellee S.S.

Stephen L. Watsky, Washington, DC, for appellees C.A.B. and H.N.B.

Tobey K. Oliver, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief for the District of Columbia.

Before THOMPSON and OBERLY, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellant L.M.F., the grandmother of minor child L.S., appeals from a final decree of the Family Court of the Superior Court denying her petition to adopt L.S. and granting the competing adoption petition of C.A.B. and H.N.B., the child's foster parents. In the same proceeding, the court terminated the parental rights of S.S., the child's natural mother, and also the parental rights of the child's natural father, Lo.S., who did not seek review of the magistrate judge's order to that effect. The mother had consented to the grandmother's adoption petition and withheld her consent from the foster parents' petition. The grandmother, L.M.F., argues that the trial court applied an incorrect standard, preponderance of the evidence, when evaluating the merits of the competing petitions. Appellee foster parents oppose this argument on the ground that the finder of fact, the magistrate judge, specifically made the necessary finding by clear and convincing evidence. Appellee Guardian ad Litem (GAL) of the child makes the same argument. Appellee the District of Columbia argues similarly that the magistrate judge's finding under the preponderance standard was harmless error, as she found against appellant under the clear and convincing standard as well. Appellees also argue that we should dismiss the case for lack of jurisdiction, for lack of standing, or because this court cannot afford an adequate remedy. While we disagree with appellees' justiciability arguments, we agree with appellees that the trial court did not abuse its discretion in its evaluation of the competing petitions. Accordingly, and for the reasons stated herein, we affirm.

## I. The Neglect and Adoption Proceedings

Because of the nature of the issues involved, we set forth the procedural history and the most relevant facts in some detail. L.S. was born on January 30, 2005, to mother S.S. and father Lo.S. In February of 2005, doctors discovered that the child suffered from a "posterior urethral valve" and "poor renal function" that caused significant problems for him in voiding urine. At the age of two-and-a-half weeks, the child underwent vesicostomy surgery at Children's National Medical Center to "relieve the urinary obstruction."[1] He was released to the mother on February 21, with instructions for his care. Two days later, the child had to be hospitalized again because of alleged neglectful treatment by the mother in administering the care he needed. On February 23, he was placed in shelter care and, on March 2, when he was less than five weeks old, he was placed in the foster parents' home, where he remained until the time of trial.

On June 2, 2005, the mother, S.S., entered into a stipulation with the government that she had a history of mental illness and had been diagnosed with bipolar disorder. On that same day, the Superior Court found, pursuant to D.C.Code § 16–2301(9)(A)(iv) (Supp. 2007), that the child was neglected and committed the child to the care and custody of the Child and Family Services Agency. The court initially set reunification with the mother as the permanency goal, but on May 8, 2006, that goal was changed to adoption and guardianship by the maternal grandmother, L.M.F. The grandmother was already caring for four children, including three of the mother's other children.

On September 15, 2006, the court again changed the reunification goal, this time to adoption by the foster parents. On September 27, the foster parents filed a petition to adopt the child. On November 27, the grandmother filed a competing adoption petition. On December 1, 2006, a Superior Court judge consolidated the cases with respect to the competing adoption petitions and the neglect case. On July 17, 2007, the mother filed a consent to the grandmother's adoption petition. A trial was held on the competing petitions and motions to terminate parental rights on October 22, 23, 29, and 30, November 28 and 30, and December 11, 2007, before Magistrate Judge Janet Albert. The GAL supported the foster parents' adoption petition.

At the trial, the magistrate judge received testimony and exhibits relating to the relative merits of the petitioners, including testimony from social workers, family members, the petitioners, and the natural parents.[2] The magistrate judge found, inter alia, that the child had lived virtually his entire life with the foster parents and had a "strong and secure" attachment to them. The magistrate judge credited the testimony of Dr. Susan Theut, a child psychiatrist with Youth Forensic Services who specialized in the bonding and attachment of children ages zero to three. Dr. Theut conducted attachment evaluations of the child to the foster parents and of the child to the grandmother. Dr. Theut found that the foster parents' contact with the child was "warm, rich, and emotionally textured." Dr. Theut also

---

1. The procedure involved cutting a hole beneath the child's navel to allow urine to be voided through this hole.

2. Lo.S. was apparently incarcerated at various times from 2005 to 2008, including at the time of the trial on the competing adoption petitions. He testified via telephone from federal prison in Kentucky, but the court found he had little to no involvement in the child's life. He is not a party to this appeal.

found that there was a "good connection" between the child and the grandmother, but of the competing petitioners, the foster parents' attachment to the child was stronger. She concluded that the child viewed the foster parents as his mother and father, and she opined that removing the child from the home of the foster parents "would seriously affect his emotional or mental health," and "would likely impair his ability to form secure and loving attachments."

In addition to crediting the testimony of Dr. Theut, the magistrate judge found that the foster parents "demonstrated a more mature emotional health" than the grandmother, who at times put her own emotional needs before those of the child's. The magistrate judge found the foster parents capable and reliable in dealing with the child's medical problems, in that they had never missed a doctor's appointment or a single dose of medication for the child. The child appeared to be healthy and well adjusted in their care. The magistrate judge found that "there was not a shred of doubt" that the foster parents "would meet [the child's] future medical needs, no matter how extensive, expensive or time-consuming." By contrast, the grandmother had "only attended a handful" of the child's numerous medical appointments and was frequently late to those she attended. She appeared withdrawn when doctors would attempt to discuss the child's medical needs, either out of frustration or a fear that she was being judged for her lack of knowledge. The magistrate judge was left with "no confidence" that the grandmother would be able to meet the child's ongoing medical needs.

The magistrate judge found that the child had positive relationships with the other children in the grandmother's household and that the child would have the greatest ongoing contact with his birth family if he lived with the grandmother. However, the magistrate judge also found that the mother's continuing presence would have a negative effect on the child. Specifically, the court noted that the mother was a source of "tension and instability" when she would visit the grandmother's household, evidenced by the fact that on two occasions the grandmother took out protective orders against the mother. The court found that in addition to her mental condition, the mother had admitted to a long history of using marijuana and PCP. Further, the court found that the grandmother was under a great deal of stress from taking care of four other grandchildren already, and that, "Under the best of circumstances, [the grandmother] is spread extremely thin without significant outside support."[3] Ultimately, the magistrate judge concluded that the grandmother "is not a viable placement option" for the child.

On April 3, 2008, the magistrate judge issued an order (1) denying the grandmother's adoption petition, (2) waiving the consent of the biological father and mother to the foster parents' adoption petition, and (3) granting that petition. Five days later, on April 8, 2008, she issued an amended order (1) denying the grandmother's adoption petition, (2) waiving the mother's and father's consent to the foster parents' adoption petition, and (3) ordering that CFSA "proceed to make all necessary preparations to proceed to final decree" in the foster parents' petition.[4] In consider-

**3.** The magistrate judge also found the grandmother had failed to complete the foster parent licensing process and the adoption licensing process because she was overwhelmed with other parenting responsibilities. As a result, CFSA was never able to make a final report or recommendation as to her adoption petition.

**4.** There are no indications in the record on appeal why the original April 3, 2008, order

ing the petitions before her, the magistrate judge found by clear and convincing evidence that both parents were withholding consent to the adoption by the foster parents against the best interests of the child, pursuant to D.C.Code § 16–304(e). In so doing, the court analyzed the case in light of each of the factors in D.C.Code § 16–2353(b). The court also found by clear and convincing evidence that the parents had abandoned the child pursuant to D.C.Code § 16–304(d).

Having found that the parents' consent should be deemed waived, the magistrate judge proceeded to analyze the merits of the competing petitions to determine which placement was in the child's best interest, using a preponderance of the evidence standard. Counsel for the grandmother argued that under this court's decision in *In re T.J.*, 666 A.2d 1 (D.C.1995), the court could override the mother's choice of custodian only if it found by clear and convincing evidence that the placement would not be in the child's best interest. The magistrate judge disagreed, citing this court's decision in *In re J.D.W.*, 711 A.2d 826 (D.C.1998), and concluded that once a determination has been made by clear and convincing evidence that the natural parents are withholding their consent to the adoption petition contrary to the best interest of the child, the two competing adoption petitions may be compared using the preponderance of the evidence standard.

In a footnote, however, the magistrate judge articulated her further conclusion that the court would find, even under a "clear and convincing evidence" standard, that placement with the grandmother was not in the child's best interests. She supported this conclusion by finding:

> The evidence is overwhelming that L.M.F. is overwhelmed with the responsibility of raising four other grandchildren. Because of that immense responsibility she was either unable or unwilling to participate in the [child]'s medical care. She neither understands the gravity of his medical condition nor has the capacity—both because she is spread so thin and because she is in denial—to meet the [child]'s ongoing medical needs. Moreover, the child has a secure attachment to C.A.B. and H.N.B. and removal from their care would have devastating effects on his physical and mental health.

On April 21, 2008, the mother and the grandmother independently filed timely motions for review of the magistrate judge's April 8, 2008, order by an associate judge of the Superior Court, pursuant to Super. Ct. Gen. Fam. R. D(e). On August 7, 2008, Associate Judge Laura Cordero of the Family Court dismissed these motions without ruling on them, finding that the magistrate judge's order was not final for the purposes of a Rule D(e) review. The court reasoned that since no final decree had been entered on the foster parents' petition, the April 8 order did not dispose of "the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered."[5] The court ruled the grandmother and mother had to wait until a

---

was amended, or why a final adoption decree for the foster parents was not issued until October 2008, other than the reference in the amended order to "preparations to proceed to final decree" to be made by CFSA.

**5.** The court cited *McDiarmid v. McDiarmid*, 594 A.2d 79, 81 (D.C.1991). The court also

relied on *In re K.M.T.*, 795 A.2d 688 (D.C. 2002), where we observed, "finality has generally been held to mean either a restoration of physical custody, a termination of parental rights, or an adoption. An order that is merely a step toward one of those acts is therefore not final and appealable." *Id.* at 690.

final decree of adoption was entered to have the case reviewed under Rule D(e).

On October 1, 2008, the magistrate judge granted the foster parents' adoption petition in a final adoption decree. On October 10, the grandmother and mother once again moved for review by an associate judge.[6] The foster parents argued that the motions for review were no longer timely, since Judge Cordero's August 7 order was in error in finding that the April 8 order of the magistrate judge was not final for the purposes of review by an associate judge, and therefore the motions for review, filed on October 10, were untimely for purposes of review of the April 8 denial of the grandmother's adoption petition. Judge Cordero dismissed this argument for the same reasons she articulated in her August 7 order, and she reached the merits of the grandmother's and mother's arguments.

On June 24, 2009, the trial court denied the motions for review on the merits. The court ruled that the magistrate judge was correct in applying the preponderance of the evidence standard for the competing adoption petitions. The trial court did not comment on the magistrate judge's alternative conclusion that the evidence supported granting the foster parents' petition over the grandmother's, even under a clear and convincing evidence standard. The court found that "the evidence supports the Magistrate Judge's findings." Specifically, the court cited to the evidence of the child's medical condition, noting that the evidence showed "the severity of Respon-

dent's condition, the ongoing medical concerns, his continuing need for the frequent administration of medicine, and his required future medical supervision."

The court squarely rejected the grandmother's argument that the magistrate judge "improperly considered the [foster parents'] material superiority," pointing out that "the Magistrate Judge's findings did not relate to material superiority; rather, they related to the relative safety and well-being of Respondent." The court went on to note the magistrate judge's consideration of the social worker's testimony that the grandmother's home was dirty, cluttered and smoke-filled (this resulted from the grandmother's continuing to smoke, even though the respondent child's half-sister suffered from asthma). This was in contrast to the home of the foster parents which, the magistrate judge found, "was very appropriate and sparkling clean as [the female adoption petitioner] was very sanitary." Because the magistrate judge was required to compare the relative merits of the competing adoption petitions, and that comparison required consideration of the impact the placement would have on the child's health, safety and well-being, the trial court concluded, the magistrate judge "committed no error in comparing the placements and finding that placement with the [foster parents] better served the [child's] best interests." On July 14, the grandmother noted an appeal with this court. The mother has not appealed.

**6.** The District contends that it is "unclear what order(s) [the grandmother] attempted to challenge" in her motion for review because the motions of the grandmother and the natural mother "are not in the record." Under Rule 10(a)(1) of the rules of this court, "the original papers and exhibits filed in the Superior Court" are part of the record on appeal. The absence of this particular paper, the mo-

tion for review filed on October 10, 2008, from the appendix of appellant's brief or the other papers before us would present no problem, in any event, as the trial court, in its June 24, 2009, order explicitly states that the arguments in the motions for review are "substantively identical" to the arguments made in the April 21, 2008, motions.

## II. Jurisdiction

Appellees argue this court lacks jurisdiction to hear the grandmother's appeal. The basis of this argument is that the trial court acted erroneously in dismissing the grandmother's April 21, 2008, motion for review because the denial of the grandmother's adoption petition *was* a final order, and therefore the grandmother's motion for review on October 10, 2008, was not timely. Appellees further argue that once Judge Cordero dismissed the grandmother's motion for review on August 7, the grandmother had a remedy, which was to appeal to this court. She did not do so, and therefore, appellees argue, this court cannot exercise review over her untimely appeal of the denial of her adoption petition.

■ We disagree. As we stated above, the trial judge expressed the view that the magistrate judge's order of April 8, 2008, was not a final order for purposes of review by a Family Court judge under rule D(e) of the General Rules of the Family Division. The District cites no authority for the proposition that when there are competing adoption petitions and a magistrate judge denies one, but keeps the other petition under consideration, the denial of the first is ripe for review. Judge Cordero reasoned, to the contrary, that because no final decree had been entered on the foster parents' petition, the April 8 order did not dispose of "the whole case on its merits so that the court had nothing remaining to do but to execute the judgment or decree already rendered," citing *McDiarmid, supra* note 5, 594 A.2d at 81, and *In re K.M.T., supra* note 5, 795 A.2d at 688 (an order "usually is not final unless it completely resolves the case").

We agree. In circumstances like those in the present case, where two competing adoption petitions have been consolidated for trial, the appropriate course for the Family Division judge to follow when only one of the petitions has been ruled upon by the magistrate judge is to decline to consider, review or rule upon the matter raised in the motion for review of that order, but rather to dismiss the motion, as the Family Court judge did here.[7]

This court has jurisdiction over appeals made within thirty days of final orders or judgments of the Superior Court. D.C.Code § 11–721(a)(1) (2001); D.C.App. R. 4(a)(1); *Banov v. Kennedy,* 694 A.2d 850, 856 (D.C.1997). In this case, the final order of the Superior Court was entered on June 24, 2009, and the grandmother's appeal from that final order was timely.

■ The District argues this court cannot afford the grandmother an adequate remedy because she appealed only the denial of her adoption petition, and not the granting of the foster parents' petition. Contrary to the District's contention, the record shows the grandmother did properly appeal the trial court's adjudication of

---

7. A somewhat similar situation exists when the trial court rules in the course of an adoption proceeding that it will waive the consent of the natural parents to the adoption, having found that their consent has been withheld contrary to the best interest of the child. We have said that "an order waiving a birth parent's consent to an adoption is not a final order and may not be appealed until the adoption proceedings have been concluded." *In re Petition of S.J.,* 772 A.2d 247, 248 (D.C. 2001). On the other hand, it is important to observe that there may be some orders entered by a Family Court judge dismissing a motion for review of a magistrate judge's ruling that are appealable to this court, for example, one presenting a situation comparable to that in *In re D.M.,* 771 A.2d 360 (D.C.2001), where, not in the course of an ongoing proceeding such as for adoption or termination of parental rights, a magistrate judge enters an order as consequential as barring visitation by a mother with her minor daughter.

both petitions. Our Rule 3(c)(1)(B) requires an appellant's notice of appeal to "designate the judgment, order, or part thereof being appealed." In her notice of appeal, in the space for the date of the order appealed from, the grandmother wrote October 1, 2008, and June 24, 2009. On these dates, the orders that issued were (1) the decree of the magistrate judge granting the foster parents' adoption petition (October 1), and (2) the order of the trial court denying the grandmother's and mother's motions for review of the magistrate judge's orders (June 24). In the June 24, 2009, order, the trial court specifically addressed and rejected the grandmother's arguments relating to both adoption petitions, as compared against each other. Further, "this court has never indicated that an appellant must always be impeccably precise in meeting" Rule 3(c)(1)(B)'s requirement. *Perry v. Sera*, 623 A.2d 1210, 1215 (D.C.1993); *see also Patterson v. District of Columbia*, 995 A.2d 167, 172 (D.C.2010) (rule requiring designation of order being appealed is, "judging by the case law, more forgiving" than rule requiring designation of parties appealing). Under the circumstances presented here, the notice of appeal is clear enough to "demonstrate compliance with the rule" and thus to "preserve for review the claims of" the grandmother with respect to both of the adoption adjudications. *Patterson*, 995 A.2d at 171.

### III. Standing

■ Appellees assert that the grandmother lacks standing to challenge the trial court's purported application of an erroneous legal standard to the competing adoption petitions. They argue that even if the court erred in failing to give sufficiently weighty consideration to the mother's choice of caretaker for the child, the right to have that consideration applied is personal to the mother. Since the mother has not appealed, they argue, this claim cannot be asserted by the grandmother on appeal.[8]

This court has held that a parent is entitled to have his or her choice of caretaker be given weighty consideration. *See In re T.W.M.*, 964 A.2d 595, 603 (D.C. 2009); *T.J.*, 666 A.2d at 15. These cases are often decided against the backdrop of the fundamental right to parent, which would be burdened if the parent's choice of caretaker were not so respected. *See T.W.M.*, 964 A.2d at 602 ("[o]ur holding in *T.J.* is premised on the notion[ ] that natural parents have a 'fundamental liberty interest ... in the care, custody, and management of their children'") (quoting *T.J.*, 666 A.2d at 11). In various contexts, courts have held that a litigant may not assert a violation of another's constitutional rights as a basis for pursuing relief on appeal. *See, e.g., Tileston v. Ullman*, 318 U.S. 44, 46, 63 S.Ct. 493, 87 L.Ed. 603 (1943) (due process); *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (Fourth Amendment). Appellees essentially argue that the grandmother lacks standing to claim a violation of the mother's fundamental right to parent.

The grandmother, however, is not asserting a violation of constitutional rights. Nor were the parents in *T.J.* or *T.W.M.* In those cases and in the present one, the appellants challenged the adoption disposition on the ground that the court viewed the evidence using an erroneous *evidentia-*

8. We note that appellees do not argue that the grandmother lacks standing to bring her claim in its entirety, instead contending that she lacks standing to raise the argument regarding the standard of proof. The grandmother clearly has standing to appeal to this court as a general matter, since the denial of her adoption petition made her a "party aggrieved by" a final order of the Superior Court. *See* D.C.Code § 11–721(b) (2001).

*ry standard. See T.W.M.,* 964 A.2d at 601 (parents contend that trial judge failed to give their choice of caregiver sufficient "weighty" consideration); *see also In re S.M.,* 985 A.2d 413, 420 (D.C.2009) ("[w]e cannot properly assume that the court's application of its findings, while looking through the prism of an erroneous legal test, would be the same when looking through another prism [encompassing the proper test]") (citation omitted). The *T.J.* standard, by its nature, contemplates application when the petitioning parties are not the parents themselves. The fact that this standard has its roots in the parents' fundamental rights does not mean that the necessity of applying it in assessing the competing petitions of third parties evaporates if the parents are not parties on appeal.

Once the mother consented to the grandmother's petition, the grandmother occupied a position different from that of every other potential petitioner for adoption of the child. The mother, whose parental rights were intact at every stage of the proceeding, had designated the grandmother as the only adoption petitioner to whom she gave her consent. The mother having given this unique support to the grandmother's petition, the trial court was obliged to weigh the evidence in a manner that took that support into account, that is, under the clear and convincing standard of proof.

Moreover, the use of the clear and convincing standard is warranted by more than the parents' fundamental rights. The standard is also consonant with considerations that focus purely on the child. We have repeatedly emphasized that it is the child's best interest, not the fundamental right to parent, that is paramount in adoption cases. *See, e.g., In re G.K.,* 993 A.2d 558, 570 (D.C.2010); *In re S.M.,* 985 A.2d at 419. We made clear in *T.J.* that ultimately, "the child's best interest should be the determining factor for the trial court." 666 A.2d at 15. Custody for the great-aunt in *T.J.,* therefore, was appropriate not just because a contrary result would burden the mother's fundamental rights, but because a parent's choice of caregiver is entitled to great weight in the determination of what is in the child's best interest. *Id.* Given that recognition, we held that "[t]he natural mother's views . . . must be taken into consideration in determining what is in the child's best interest." *Id.* Considerations about the child's well-being permeate every aspect of an adoption case, and those considerations are no less present when neither parent is a party. These considerations counsel in favor of allowing the grandmother to assert her argument regarding the standard of proof on appeal.[9]

## IV. Application of the Proper Standard of Proof

■■■ "We review a trial court's order granting adoption for abuse of discretion, determining whether the trial court exercised its discretion within the range of possible alternatives, based on all the rele-

---

9. The grandmother also argues on appeal that the trial court erred in finding that the mother had abandoned the child pursuant to D.C.Code § 16–304(d). Appellees argue the grandmother lacks standing to assert this claim as well. However, because we hold that the trial court properly applied a clear and convincing evidence standard to the denial of the grandmother's adoption petition, we need not reach the grandmother's argument, since whether the finding of abandonment was properly reached or not, the trial court was nonetheless obligated to apply, and did apply, the clear and convincing standard to the grandmother's adoption petition. See *infra* Section IV. Thus, we need not reach appellees' argument that the grandmother lacks standing to make the claim that the trial court erred in finding abandonment.

vant factors and no improper factors." *S.M.*, 985 A.2d at 418 (internal citations and quotation marks omitted). In so doing, "we assess whether the trial court applied the correct standard of proof, and then evaluate whether its decision is supported by substantial reasoning drawn from a firm factual foundation in the record." *T.W.M.*, 964 A.2d at 601 (citations and quotation marks omitted).

In *T.J.*, this court recognized that parents have a "fundamental liberty interest in the care, custody, and management of their children." 666 A.2d at 11. This being the case, even where they themselves have been found unfit to parent, their choice for an alternate caretaker in a custody determination must be given "weighty consideration." *Id.* Therefore:

> Where the parent(s) have unequivocally exercised their right to designate a custodian, *i.e.*, made their own determination of what is in the child's best interest, the court can "terminate" the parent(s)' right to choose only if the court finds by clear and convincing evidence that the placement selected by the parent is clearly not in the child's best interest. . . .

666 A.2d at 16.

Despite this unambiguous language, our fact-specific holding in another case, *J.D.W.*, led the magistrate judge and associate judge in the present case to question the scope of *T.J.'s* application. In *J.D.W.*, a mother had voluntarily surrendered custody of her child at his birth, and two sets of prospective parents petitioned for adoption. 711 A.2d at 828. The court was faced with a unique set of circumstances:

the mother initially voiced her consent to adoption by the mother's brother and sister-in-law, but then, admittedly out of spite arising from her brother's lack of support during her personal drug crisis, gave formal written consent to adoption by the foster parents. *Id.* at 829. The court employed a two-step process, finding first by clear and convincing evidence that the mother was withholding her consent to the brother's adoption petition contrary to the child's best interests, and then finding by a preponderance of the evidence that custody in the brother and sister-in-law would be in the child's best interest. *Id.* at 829–30. We affirmed, holding that "[i]n such circumstances, we think that the trial court permissibly focused . . . on the mother's reasons for withholding consent to the Wilsons," because "[t]hose reasons ultimately bore directly upon whether the withholding of consent was indeed at the time motivated by and in the 'best interests' of the child." *Id.* at 833. The two-step inquiry, with a different level of proof applied at each stage, was thus deemed reasonable in the "unusual situation" presented, where the mother's actions and testimony showed persuasively that the mother was not acting in the child's best interests when she gave her consent to a non-family member's adoption petition.[10] *See id.*

Our subsequent holding in *T.W.M.*, *supra*, laid to rest any ambiguity as to what standard to apply in the usual case, where the evidence simply shows that a natural parent has consented to one adoption peti-

---

10. The magistrate judge and the associate judge also cited to certain factors in *T.J.* as providing a justification for a narrower reading of its holding. Among these factors was that *T.J.* did not involve competing adoption petitions but rather an adoption petition by the foster mother and a complaint for custody by the mother's preferred caregiver, the child's great aunt. 666 A.2d at 5. The trial court noted that while the mother's preferred placement in *T.J.* was designed to allow for the "preservation of the parent-child relationship," the mother's preferred placement in the present case, in the court's view, was not.

tion and not to the other. There, we clarified that *T.J.'s* holding meant that:

> in a case where there are competing adoption petitions for placement of a child and one of the petitioners is favored by the natural parent, the party without the parent's consent has the burden of establishing by clear and convincing evidence that placing the child with the parent's preferred caregiver is contrary to the child's best interest.

*T.W.M.*, 964 A.2d at 604. Appellee the District of Columbia concedes that, given *T.W.M.'s* unambiguous language, the magistrate judge and the associate judge incorrectly concluded that it was appropriate to apply the preponderance standard in weighing the petitions in this case.

■ Our case law thus shows that a parent's preference for her child's caretaker may be overridden only by clear and convincing evidence. This standard applies regardless of whether the adoption proceeding ultimately concludes with a termination of the parent's rights. *See id.* at 603 ("[b]ecause their parental rights were intact *at the time of the adoption proceeding*, Appellants had not forfeited their right to choose a caregiver for [the child] merely because they were unfit to personally parent the child") (emphasis added). Absent extraordinary circumstances like those present in *J.D.W.*, this same standard applies regardless of whether the parent was found by clear and convincing evidence to be withholding her consent to one of the petitions contrary to the child's best interests, as required by D.C.Code § 16–304(e). *See T.J.*, 666 A.2d at 5 (court found by clear and convincing evidence that mother was withholding consent con-

trary to child's best interests); *id.* at 16 (despite this finding, court still required, when comparing petitioning parties, to override mother's preference only upon a showing of clear and convincing evidence); *S.M.*, 985 A.2d at 419 (even though father was found to be withholding consent contrary to best interest, reversible error where court did not find by clear and convincing evidence that placement with petitioners was in child's best interest).[11]

Applying the clear and convincing evidence standard at each step is necessary because, in determining whether the parent's consent can be waived under § 16–304, the court is, in effect, conducting a comparison between the natural parent(s) and the petitioners from whom the parents have withheld consent. *See T.J.*, 666 A.2d at 5 ("the court found . . . when pitting the foster mother against the natural parents, that the parents were withholding their consent to the adoption contrary to T.J.'s best interest"). In the second step, the court is comparing the competing adoption petitioners against each other, and there the merits may be far more balanced. If the court is to protect the parent's right to have her choice of caretaker overridden only by clear and convincing evidence "that placing the child with the parent's preferred caregiver is contrary to the child's best interest,"[12] the clear and convincing evidence standard must be applied at each step.

■ Further underlying the necessity of applying the clear and convincing evidence standard throughout the process is this court's longstanding recognition that the "fundamental liberty interest of natural parents in the care, custody and manage-

---

11. This would, *a fortiori*, apply with equal force to a finding that the parent has "abandoned" the child pursuant to D.C.Code § 16–304(d), which also requires a finding by clear and convincing evidence.

12. *T.W.M.*, 964 A.2d at 604.

ment of their children does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the state." *Matter of P.D.*, 664 A.2d 337, 340 (D.C.1995) (Mack, J., concurring) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). "If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs." *Santosky*, 455 U.S. at 753, 102 S.Ct. 1388. We have held that "only upon a final decree of adoption are the 'rights and duties' of natural parents terminated." *In re S.J.*, *supra* note 7, 772 A.2d at 248. Thus, the necessity of an evaluation of the competing adoption petitions using the clear and convincing evidence standard was in force at all points during the trial court's analysis.

■ Despite the view by the magistrate judge and associate judge that the foster parents' adoption petition could be granted if a preponderance of the evidence showed it was in the child's best interests, the granting of the foster parents' adoption petition over that of the grandmother's does not require reversal. The magistrate judge also found, when applying the clear and convincing standard of proof, that custody for the grandmother would not be in the child's best interest. She found that the grandmother was "overwhelmed" with her existing parenting responsibilities and that she was "either unable or unwilling to participate in the [child]'s medical care." She further found that because of the child's secure attachment to the foster parents, his removal from their care would have "devastating effects on his physical

and mental health." Given the testimony presented, particularly by Dr. Theut regarding the bonding between the child and the foster parents, these factual findings were not "clearly erroneous," and therefore we do not disturb them. *In re Baby Boy C.*, 630 A.2d 670, 683 (D.C.1993). Indeed, the numerous findings comparing the two prospective placements throughout the magistrate's order plainly buttress her later conclusion that clear and convincing evidence also supported the granting of the foster parents' petition.

While the associate judge did not make a similar, alternative finding by clear and convincing evidence, she affirmed the magistrate's ruling, not disturbing any of her findings of fact and stating that "the Magistrate Judge's decision was ... fully supported by the evidence." Further, while the court explicitly stated its support for the use of the preponderance standard, it at no point called into question the magistrate's legal conclusion of clear and convincing evidence, based on the same findings of fact. We are mindful that from a procedural standpoint, our role is to review the order of the associate judge, not the magistrate judge. *See D.H.*, 917 A.2d at 114 n. 1. However, we do not believe our powers of appellate review are so limited that, in reviewing the trial court's final order we may not look to the findings and conclusions of the fact finder on which that ruling is based.[13] A contrary conclusion would create the need for countless remands, consuming time and judicial resources, in cases like the present one, where a magistrate has painstakingly reviewed the record and made comprehensive findings and conclusions, and an asso-

---

13. Appellee the District of Columbia argues that the magistrate judge's use of the preponderance standard is harmless error as the magistrate judge also found in favor of appel-

lees C.A.B. and H.N.B. using the clear and convincing standard. Thus, it argues, the error did not affect the outcome.

ciate judge succinctly affirms.[14]

Under the circumstances, where the evidence strongly supports the magistrate judge's conclusion under a clear and convincing evidence standard, and where the associate judge did nothing to disturb this conclusion, we conclude that the trial court did apply, and the evidence did meet, the more exacting standard of proof necessary to grant the foster parents' petition.[15] The evidence, as the magistrate judge put it, was "overwhelming" that the foster parents were better able to meet the needs of the child than the grandmother, and had done so admirably since his birth. Accordingly, a remand to the trial court for an additional review under the clear and convincing evidence standard would serve no useful purpose.

Accordingly, the order entered by the trial court is hereby affirmed.

*So ordered.*

14. Arguing in support of the Family Court's determination that the foster parents' adoption petition should be granted, the GAL states:

> The magistrate judge conducted a meticulous review of the record evidence, concluding in a sixty-eight page opinion that adoption by L.M.F. was contrary to L.S.'s best interests. While the magistrate judge believed she need only make this finding by a preponderance of the evidence, she expressly held that her decision would be the same under the higher clear and convincing standard.... This holding was well-supported by the extremely detailed analysis of the record evidence.

15. In addition to arguing the application of an erroneous legal test, the grandmother makes several arguments on appeal that clearly lack merit. Among these is an argument that the court incorrectly favored the foster parents because of their increased education and economic status over that of the grandmother and that the grandmother's adoption petition should have been treated as a petition for guardianship, and therefore the clear and convincing evidence standard should have been applied, pursuant to *T.J.* Regarding the latter argument, we have already addressed the proper standard of review for the competing adoption petitions, and we are satisfied that the trial court properly analyzed the petitions under this standard. Regarding the former argument, as we set forth above, the trial court concluded that the magistrate judge properly considered the petitions in light of the "relative safety and well-being" of the child and did not decide the case because of the foster parents' "material superiority." The record, including the copious findings regarding the child's medical condition and the parties' relative abilities to address his medical needs, gives this court no reason to call the trial court's conclusion into question.